IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOUA VANG YANG,<br><br>        Plaintiff,<br><br>   vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. CV F 05-0172 AWI LJO<br><br>**FINDINGS AND RECOMMENDATIONS ON SOCIAL SECURITY COMPLAINT**<br>(Docs. 17, 23, 24.) |

**INTRODUCTION**

Plaintiff Joua Vang Yang ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is neither disabled nor entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1382c. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court RECOMMENDS to DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings.

**BACKGROUND**

**Plaintiff's Personal Background**

Plaintiff is age 69, of Hmong heritage, illiterate, and unable to communicate in English and has no past relevant work experience. (AR 19, 81, 87, 94, 97, 215, 216.)

**Administrative Proceedings**

On July 18, 2002, plaintiff filed his SSI application to claim disability since June 1, 2002 based on old war wounds, head injuries, impaired vision, hearing loss, poor memory, fainting spell, high cholesterol, aging and depression. (AR 81, 88.) On that same date, a SSA interviewer noted that plaintiff said "little about his medical condition." (AR 99.) With its April 2, 2003 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined that plaintiff's condition is not severe enough to be disabling. (AR 67.) On April 15, 2003, plaintiff filed his Request for Reconsideration to claim that he is disabled and that his condition worsens. (AR 71.) On that same date, a SSA interviewer noted that plaintiff's daughter-in-law answered questions and that plaintiff displayed difficulty to hear and to understand questions. (AR 117.) With its July 2, 2003 Notice of Reconsideration, SSA again denied plaintiff's claim and determined that plaintiff's condition is not severe enough to be disabling. (AR 73.)

On July 22, 2003, counsel was appointed for plaintiff. (AR 52.) On the same date, plaintiff filed his Request for Hearing by Administrative Law Judge to claim he is "totally disabled." (AR 77.) After an April 30, 2004 hearing, the ALJ issued his June 1, 2004 decision to conclude that plaintiff retains the residual functional capacity to perform the full range of unskilled work and is not disabled. (AR 20, 25.)

On July 23, 2004, plaintiff submitted to SSA's Appeals Council his Request for Review of Hearing Decision to seek review of the ALJ's June 1, 2004 decision. (AR 14.) On December 9, 2004, the Appeals Council denied plaintiff's request to render the ALJ's June 1, 2004 decision as the Commissioner's final decision subject to this Court's review. (AR 5.)

**Medical History And Records Review**

*Kings Winery Medical Clinic*

Plaintiff treated with family practitioner John V. Dao, M.D. ("Dr. Dao"), at Kings Winery Medical Clinic, and on July 15, 1997 complained of body ache and back pain. (AR 186.) On August 18, 1997, plaintiff complained of body ache, lower back pain and stomach ache. (AR 185.) On June 11, 2002, plaintiff complained of neck and back pain. (AR 184.) On July 11, 2002, plaintiff complained of fainting and tiredness. (AR 184.) After July 29, 2002 complaints of weakness, dizziness and heart palpitation, plaintiff was referred to a cardiologist. (AR 183.) July 29, 2002 chest x-rays were negative and revealed clear lungs and normal heart size. (AR 178.) On October 9, 2002, plaintiff complained

of back and neck pain and body weakness. (AR 176.) Plaintiff was assessed with low back pain and myalgia. (AR 176.) On December 5, 2002, plaintiff complained of pain to his back, neck and eyes. (AR 174.)

On January 7, 2003 and May 12, 2003, plaintiff complained of a dry cough and pain to his neck, back and eyes. (AR 172, 174.) On May 7, 2003, plaintiff complained of dry eyes, back pain and body ache. (AR 171.) On May 12, 2003, plaintiff complained of dry cough and neck and back pain. (AR 199.) On June 17, 2003, plaintiff complained of blurry eyes and pain to his shoulder, back and neck. (AR 199.) Dr. Dao assessed early cataract. (AR 199.) On July 29, 2003, plaintiff complained of back and neck pain, body numbness and pounding headache. (AR 198.) Dr. Dao assessed cataract retinopathy. (AR 198.) On August 22, 2003, plaintiff complained of dry cough, itchy throat, chronic headache, and pain to his back, shoulders and neck. (AR 198.) Dr. Dao assessed glaucoma neuropathy. (AR 198.)

Dr. Dao completed an August 22, 2003 Questionnaire to indicate that plaintiff's medical problems preclude plaintiff to perform full-time work at any exertional level, including sedentary. (AR 195.) Dr. Dao listed plaintiff's primary impairments as cataract, bilateral, glaucomatous neuropathy, bilateral, and low back pain. (AR 195.) Dr. Dao based his conclusion on an ophthalmologist's report, clinical examination and plaintiff's complaints. (AR 195.) Dr. Dao estimated that plaintiff is able to: (1) sit up to two hours at one time; (2) stand/walk up to an hour at one time; (3) sit four to six hours over an eight-hour period; and (4) stand/walk two to four hours over an eight-hour period. (AR 195.) Dr. Dao noted that plaintiff need not lie down or elevate his legs during an eight-hour period. (AR 195.) Dr. Dao noted that plaintiff's poor vision prevents plaintiff to work "unless he accepts to go for corrective surgery." (AR 195.)

On September 24, 2003, plaintiff complained of headache and back and neck pain and requested Tylenol #3 for pain. (AR 197.) On October 22, 2003, plaintiff complained of back and right shoulder pain and dry cough. (AR 197.) Dr. Dao assessed myalgia. (AR 197.) In late 2003, plaintiff complained of neck pain, coughing and sore throat. (AR 196.)

With his April 1, 2004 letter, Dr. Dao responded to the ALJ's request for clarification that "I have nothing further to explain his illness. Everything that I have seen is written on the Questionnaire

3

that was signed on 08/22/2003." (AR 203.)

*William Edward Hanks, M.D., Treating Cardiologist*

Cardiologist William Edward Hanks, M.D. ("Dr. Hanks"), conducted an August 1, 2002 initial cardiac evaluation and noted that on July 11, 2002, plaintiff had experienced a severe headache and dizziness and felt as if he would pass out. (AR 140.) Plaintiff further complained of chronic fatigue. (AR 140.) Dr. Hanks assessed dizziness, basal systolic ejection murmur and abnormal EKG and recommended an echocardiographic appraisal and Holter monitoring. (AR 142.) An August 9, 2002 echocardiogram revealed normal ventricular dimensions and systolic performance, mild mitral insufficiency into left atrium, and absence of valvular pathology. (AR 139.) August 19, 2002 and September 19, 2002 Holter monitors were unremarkable and revealed unremarkable sinus mechanism and rate change and absence of ventricular ectopy, sinus node malfunction or AV block. (AR 134, 138.) Dr. Hanks' October 14, 2002 letter stated that plaintiff's Holter monitor "is completely benign and offers us no explanation on a rhythm basis for his dizziness" and that his echocardiogram "is fairly benign." (AR 133.)

*Rustom F. Damania, M.D., Consultative Internist*

Internist Rustom F. Damania, M.D. ("Dr. R. Damania"), conducted a consultative examination of plaintiff and prepared an October 30, 2002 report. (AR 144.) Plaintiff explained to Dr. R. Damania that plaintiff performed volunteer work for 15 months after he arrived in the United States in 1993. (AR 144.) Plaintiff further noted that plaintiff attended adult school. (AR 144.) Dr. R. Damania noted that plaintiff had a valid driver's license and looked younger than his stated age. (AR 144, 145.) Plaintiff chiefly complained of headaches and neck and low back pain. (AR 144.) Plaintiff stated he had been hurt in the war from a shrapnel injury. (AR 144.) Plaintiff claimed that during the war a sharp piece of wood penetrated his rectum to prevent him to sit too long and to work. (AR 144.) Plaintiff noted that he was unaware of "any major medical problems." (AR 144.) Dr. R. Damania was satisfied that plaintiff "answered most of my questions and followed all of my instructions." (AR 145.)

Dr. R. Damania's physical examination was normal and revealed no old lacerations or scars to plaintiff's rectum. (AR 145-147.) Dr. R. Damania diagnosed a well healed superficial shrapnel wound at the base of plaintiff's neck, a well healed laceration near the 12th rib on plaintiff's right side, and

probable internal hemorrhoids. (AR 147.) Dr. R. Damania assessed:

> On clinical exam I did not find any objective evidence for gross physical disability. The patient is rather cooperative and pleasant. I did not see any major psychiatric problems. I see no restrictions and therefore he should have no difficulty sitting, standing, walking eight hours in and eight hour work day. He does not require an assistive device for ambulation. No exertional limitations. No postural limitations on bending, stooping or crouching. No manipulative limitations on reaching, handling , feeling, grasping or fingering. No relevant visual or communicative impairments. (AR 147.)

### *Shireen R. Damania, M.D., Consultative Psychiatrist*

Board certified psychiatrist Shireen R. Damania, M.D. ("Dr. S. Damania"), conducted an October 30, 2002 psychiatric evaluation of plaintiff. (AR 148.) Plaintiff explained that he was born in Laos, had no formal education in Laos, and grew up in military service. (AR 149.) Plaintiff noted that after he and his family fled Laos, they immigrated to the United States. (AR 149.) Plaintiff had a driver's license and noted that he drove. (AR 148.) Plaintiff indicated that he had performed volunteer work and participated in the GAIN program. (AR 149.) Plaintiff claimed inability to work because he "was injured in the war," hit by "shrapnel," and sat on a pole in combat to injure his rectum. (AR 149.) Plaintiff stated he did not receive surgical treatment and has no residual problems. (AR 149.) Plaintiff noted that he has "low back pain," feels "somewhat depressed," and sleeps with medications which help. (AR 149.) Plaintiff stated that he attends no group therapy sessions. (AR 149.)

According to plaintiff, on a typical day, he stays home but drives to the store occasionally. (AR 149.) Plaintiff complained to Dr. S. Damania of feeling "tired." (AR 149.) Plaintiff explained he is a "Shaman" by religion and attends religious functions. (AR 149.) Plaintiff noted that he takes care of his personal hygiene and grooming. (AR 149.)

Dr. S. Damania observed that plaintiff "looked much younger than his stated age." (AR 149.) Dr. S. Damania's examination revealed plaintiff's mildly depressed mood, appropriate affect, assertiveness, intact memory, attention span within normal limits, average intelligence, and absence of hearing deficits. (AR 150.) Dr. S. Damania diagnosed adjustment disorder with depressed mood and a Global Assessment of Functioning ("GAF") of 55-60. (AR 150.) Dr. S. Damania assessed that plaintiff "has adequate interpersonal and social skills." Dr. S. Damania opined:

> No difficulties were noted in memory, concentration, persistence and pace. There was not evidence of any emotional lability or deterioration.

5

He is able to understand, carry out, and remember simple as well as one- and two-step job instructions. He is able to respond appropriately to coworkers, supervisors, and the public. He is able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision. (AR 150.)

### *Psychiatric Review Technique*

Archimedes Garcia, M.D. ("Dr. Garcia"), a California Disability Determination Services ("DDS") psychiatrist, completed a November 27, 2002 Psychiatric Review Technique to conclude plaintiff lacked a severe impairment. (AR 151.) Dr. Garcia found plaintiff's mental status examination within normal limits. (AR 165.) Brian Ginsburg, M.D. ("Dr. Ginsburg"), a DDS physician, affirmed Dr. Garcia's assessment. (AR 151.)

### *Medical Imaging*

Plaintiff's March 15, 2003 lumbar spine x-rays were negative and demonstrated normal vertebral bodies and disc spaces. (AR 169.) September 28, 2004 lumbosacral spine x-rays revealed mild spondylosis. (AR 206.)

### *Medications*

Plaintiff's medications have included Aspirin 500 mg, Trazadone 100 mg, Theraseen .025 percent, Tramadol 50 mg and 100 mg, Ultran 50 mg, Tylenol 500 mg, Paphazoline, Promethazine/COD syrup, Carisoprodol 350 mg, Acetaminophen/COD No. 3, Tri-vent HC, Capsaicin, and Acular .5 ml. (AR 93, 120, 122, 125. 127.)

### **Plaintiff's Activities And Testimony**

### *Reports And Questionnaires*

Plaintiff completed a July 12, 2002 Disability Report Adult to note that several physical and medical complaints impair his concentration and cause irritability. (AR 88.) Plaintiff is usually depressed. (AR 88.)

Plaintiff completed a July 29, 2002 Daily Activities Questionnaire to note that on an average day, plaintiff stays home and sits or lies down for up to seven hours. (AR 101.) Plaintiff experiences head, neck and waist injuries from the war, poor memory, vision loss and physical complaints to prevent him to care for himself. (AR 101.) Plaintiff requires assistance with his medication preparation, bathing, grooming, dressing and household chores. (AR 101, 102.) Plaintiff experiences nightmares and takes

1  sleep medication.  (AR 101.)  Plaintiff's daughter-in-law cooks and shops for plaintiff.  (AR 102.)
2  Plaintiff neither watches television nor listens to the radio because of worsened headaches.  (AR 103.)
3  Plaintiff leaves his home once a month for doctors' appointments and requires someone to drive and
4  accompany him.  (AR 103.)  Plaintiff has difficulty getting along with others because of his low level
5  of tolerance, fatigue, fainting spells, ease of frustration, irritability, frustration and withdrawal.  (AR
6  104.)  Plaintiff has difficulty focusing and remembering.  (AR 105.)  Back ache, fatigue and dizziness
7  prevent plaintiff to stand for more than five minutes.  (AR 105.)  Plaintiff is prevented to work from
8  headaches, back pains, low tolerance level, poor memory and concentration, dizziness, fainting spells,
9  frustration, irritability, and chronic pain from gunshot wounds to his neck, head and upper waist.  (AR
10 105.)

11       Plaintiff's cousin completed a July 29, 2002 Daily Activities Questionnaire (Third Party
12 Information) to note that plaintiff spends a typical day at home sitting and lying down.  (AR 107.)
13 Plaintiff experiences head injuries, stress, vision loss, and inability to care for himself.  (AR 108.)
14 Plaintiff's daughter-in-law shops and cooks for plaintiff and pays plaintiff's bills.  (AR 108, 109.)
15 Plaintiff requires assistance with household chores.  (AR 109.)  Plaintiff has a driver's license and
16 drives.  (AR 109.)  Plaintiff tends not to associate with others because of his injuries, fainting spells,
17 fatigue and physical pain.  (AR 110.)  Plaintiff stays home because of his condition.  (AR 111.)

18       In his April 15, 2003 Reconsideration Disability Report, plaintiff noted that his condition
19 worsened to the point that he cannot get up and walk without help due to back pain.  (AR 113.)  One of
20 plaintiff's physicians told plaintiff that plaintiff is unable to lift anything heavy of stand too long.  (AR
21 113.)  Plaintiff blacks out and experiences numbness on his back and neck and weakness.  (AR 113.)
22 Plaintiff is able to dress himself but unable to perform household chores.  (AR 115.)  Plaintiff no longer
23 drives because he fears he may faint.  (AR 115.)

24       In an undated statement, plaintiff claimed to suffer head, neck and back aches and pains.  (AR
25 119.)

26                    ***Plaintiff's ALJ Hearing Testimony***

27       Plaintiff testified at the April 30, 2004 ALJ hearing that he speaks no English.  (AR 214.)
28 Plaintiff participated in the GAIN program in which plaintiff was taught a little bit of English.  (AR

215.)  Plaintiff has never had a paying job but performed volunteer work six hours a day for 15 months where he performed cleaning, sweeping and mopping.  (AR 216.)

Plaintiff claims he is unable to work because he experiences constant neck and back pain which prevents him from doing anything.  (AR 217-218.)  The burning pain shoots from his neck to his back.  (AR 218.)  Doing something increases the pain.  (AR 218.)  Walking does not alleviate the pain.  (AR 219.)  Plaintiff feels "a little bit better" when he takes medication.  (AR 219.)  The medication causes no bad side effects.  (AR 219.)  To alleviate the pain, plaintiff stands, stretches, twists, bends his back, raises his arm and receives a massage.  (AR 219.)

Plaintiff continues to experience dizziness.  (AR 223.)  Plaintiff has low energy, and his energy level has decreased.  (AR 224.)  Plaintiff blacked out and quickly saw his doctor for an injection.  (AR 225.)

Plaintiff experiences blurry vision.  (AR 225.)  Plaintiff saw a shadow when the ALJ waved his hand.  (AR 225.)  Plaintiff does not have glasses because "I can't make my way back home."  (AR 226.)  Plaintiff has never worn glasses.  (AR 227.)  Plaintiff has a driver's license and did not wear glasses for his driving test in 1995.  (AR 226, 228.)  Plaintiff last drove a couple of days prior to the hearing when he drove to the store which is a block away.  (AR 229.)  Plaintiff drives an average of twice a week.  (AR 229.)

Plaintiff is able to stand up to 10 minutes, lift up to three pounds and sit up to 30 minutes.  (AR 220.)  Plaintiff walks to the store which is a block away.  (AR 231.)  Plaintiff is able to maintain his attention and concentration up to an hour.  (AR 222.)

Plaintiff dresses, bathes and feeds himself.  (AR 222.)  Plaintiff grocery shops every two or three days.  (AR 221.)  Plaintiff neither cooks, prepares meals nor performs household chores.  (AR 223.)  During the day, plaintiff sits and walks.  (AR 223.)

None of plaintiff's treating physicians has referred plaintiff to a psychiatrist or psychologist.  (AR 217.)

Plaintiff lives with his wife and four daughters.  (AR 230.)

**The ALJ's Findings**

In his June 1, 2004 decision, the ALJ identified the primary issue as whether plaintiff is under

8

a disability. (AR 19.)  In concluding that plaintiff is not disabled, the ALJ found:

1. Plaintiff's adjustment disorder with depressed mood is a severe impairment but neither meets nor medically equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

2. Plaintiff's allegations regarding his limitations are not totally credible.

3. Plaintiff has the residual functional capacity to perform the full range of unskilled work without physical limitations in jobs that require no more than simple, repetitive and one- and two-step tasks.

4. Plaintiff has the residual function capacity to perform substantially the full range of heavy work.

5. Plaintiff is not disabled based on an exertional capacity for heavy work and plaintiff's age, education and work experience, and using section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 ("Medical-Vocational Guidelines").

6. Plaintiff's capacity for unskilled work is substantially intact and is not eroded by his nonexertional limitations at all exertional levels.  (AR 24-25.)

## DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

---

[1] "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff bears the burden to prove that he is disabled which requires presentation of "complete and detailed objective medical reports of his condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). Plaintiff must furnish medical and other evidence about plaintiff's medical impairments.  20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine whether you are disabled or blind.  You are responsible for providing that evidence.")

Here, plaintiff claims disability since June 1, 2002 based on old war wounds, head injuries, impaired vision, hearing loss, poor memory, fainting spell, high cholesterol, aging and depression. (AR 81, 88.)

With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's June 1, 2004 decision.

/ / /

**Dr. Dao's Opinion**

Plaintiff claims the ALJ improperly rejected treating physician Dr. Dao's opinion which plaintiff asserts is supported by "bilateral cataracts, glaucoma and neuropathy on eye examination, mild lumbar degeneration on x-rays, ongoing palpitations and dizziness, myalgias, and mild cardiac conditions on echocardiogram." The Commissioner responds that the ALJ properly rejected Dr. Dao's opinion.

A treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes*, 881 F.2d at 751.[2] An ALJ may reject a treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751. Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

The Ninth Circuit has further explained:

> To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must "'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." . . . The rule . . . does not apply, however, "when the nontreating physician relies on independent clinical findings that differ from the findings of the treating physician." . . . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence . . .'"

*Magallanes*, 881 F.2d at 751(citations omitted.)

An ALJ may reject a treating physician's report based on a claimant's exaggerated claims. *See, e.g., Sandgathe*, 108 F.3d at 980. A physician's opinion of disability "premised to a large extent upon claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d

---

[2] A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e). The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.

520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able to find a link between [claimant's] complaints and known medical pathologies").

"[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

As a reminder, Dr. Dao opined that plaintiff's medical problems preclude plaintiff to perform full-time work at any exertional level, including sedentary. (AR 195.) Dr. Dao estimated that plaintiff is able to: (1) sit up to two hours at one time; (2) stand/walk up to an hour at one time; (3) sit four to six hours over an eight-hour period; and (4) stand/walk two to four hours over an eight-hour period. (AR 195.) Dr. Dao noted that plaintiff's poor vision prevents plaintiff to work "unless he accepts to go for corrective surgery." (AR 195.)

After detailing the medical record, the ALJ properly discounted Dr. Dao's assessment:

> Less weight is given to the opinion of Dr. Dao; before the hearing, the claimant's representative submitted a fill-in-the-blanks, check-blocks form indicating limitations that prevent substantial gainful activity (Exhibit 10F, p. 1). However, it lacked bases for the conclusions regarding limitations, such as signs, test results, whether the limitations were based on the claimant's subjective complaints or objective findings or observation. Additionally, the preparer qualified his work preclusion statement by indicating that the claimants's poor "vision prevents him from working <u>unless</u> he accepts to go [sic] for corrective surgery" (Exhibit 10F, p. 1, emphasis added). I inquired about the signer's specialty and qualifications. I asked for explanation of specific limitations, onset date whereby restriction became effective, and bases for choosing that date, and if the condition existed less than 12 continuous months, whether it is expected to do so and at what severity level. I also asked how often and approximate dates the doctor saw the claimant, and if part of a treatment team, number and approximate dates that the form's signer consulted with other team members regarding the claimant; without this information, I am not inclined to give Exhibit 10F, p. 1 much weight. . . . Furthermore, the other substantial evidence (discussed in this decision) does not fully support the conclusion in Exhibit 10F, p. 1. Even so, because of the importance of these issues, I requested clarification from the signer of Exhibit 10F/1 and I held the record open through the date of this decision (Exhibit 7E, p. 1). The signer refused to provide the requested information (Exhibit 12F, p. 1). (AR 22.)

The ALJ appropriately accorded little weight to Dr. Dao's August 22, 2003 Questionnaire responses which lacked explanation of the broad limitations imposed by Dr. Dao. (AR 195.) Dr. Dao's vague objective findings fail to substantiate his assessment. The ALJ was entitled to reject Dr. Dao's assessment in that it is "brief and conclusory in form with little in the way of clinical findings to support

its conclusion." *Magallanes*, 881 F.2d at 751. Dr. Dao's cryptic Questionnaire responses are not entitled to deference. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check off forms); *see Batson v. Commissioner*, 359 F. 3d 1190, 1195 (9th Cir. 2003) (ALJ properly discounted a physician's checklist form view which lack supportive evidence, was contradicted by other statements and assessments of claimant's condition, and was based on claimant's subjective descriptions).

As noted by the Commissioner, Dr. Dao's assertion as to plaintiff's inability to work without corrective eye surgery does not support disability and is contradicted by the rather normal 20/25 vision found in Dr. R. Damania's examination. (AR 145.) The record lacks medical opinion that surgery would unsuccessfully correct plaintiff's cataracts. Dr. Dao's treatment of plaintiff fails to substantiate limitations to the degree noted in his August 22, 2003 Questionnaire responses. An ALJ may discredit a treating physician's opinion unsupported by the record as a whole or by objective medical findings. *Baston v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (treatment notes "are not the sort of description and recommendations one would expect to accompany a finding that [claimant] was totally disabled under the Act.") Of key note, despite the ALJ's request, Dr. Dao declined to clarify his assessment. (AR 203.) The ALJ thoroughly detailed the facts and conflicting evidence, stated his interpretation of them and made findings to support his discount of Dr. Dao's assessment. Plaintiff points to no error in the ALJ's resolution of the ambiguities of Dr. Dao's assessment and its conflicts with other evidence.

### Residual Functional Capacity

Plaintiff takes issue with the ALJ's residual functional capacity findings and states the "ALJ found nothing is severe." The Commissioner responds that the ALJ properly found that plaintiff had the residual functional capacity for simple, repetitive work at all exertional levels. The Commissioner correctly notes that the ALJ found no severe physical impairment but found plaintiff's adjustment disorder with depressed mood was severe to limit plaintiff to simple, repetitive work at all exertional levels. (AR 24.)

In the absence of evidence of a severe physical impairment for plaintiff, the ALJ properly found a residual functional capacity to perform work at all exertional levels. Dr. R. Damania's physical

examination was normal. (AR 145-147.) Dr. R. Damania found no "objective evidence for gross physical disability." (AR 147.) Dr. R. Damania found neither restrictions nor exertional limitations. (AR 147.) Dr. R. Damania assessed that plaintiff would have no difficulty to sit, stand or walk eight hours in an eight-hour work day. (AR 147.) Dr. R. Damania noted the absence of visual or communicative impairments. (AR 147.) Dr. R. Damania's independent examination findings are substantial evidence for the ALJ's residual functional capacity findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). "[T]o the extent [an examining consultative physician's] opinion rest on objective clinical tests, it must be viewed as substantial evidence that [claimant] is no longer disabled." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Moreover, DDS physicians assessed that plaintiff lacked severe physical impairments to provide further substantial evidence for the ALJ's residual functional capacity findings. (AR 59, 165-166.) A non-examining physician's findings "can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). When "an opinion of a nontreating source is based on independent clinical findings that differ from those of a treating physician, the opinion of the nontreating source may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. S. Damania's findings provide further substantial evidence for the ALJ's finding that plaintiff's adjustment disorder with depressed mood limited plaintiff to simple, repetitive work. Dr. S. Damania's examination revealed plaintiff's mildly depressed mood, appropriate affect, assertiveness, intact memory, attention span within normal limits, average intelligence, and absence of hearing deficits. (AR 150.) Dr. S. Damania diagnosed adjustment disorder with depressed mood and assessed that plaintiff "has adequate interpersonal and social skills." Dr. S. Damania found neither difficulties in memory, concentration, persistence and pace nor evidence of emotional lability or deterioration. (AR 150.) Dr. S. Damania opined that plaintiff is able to: (1) understand, carry out, and remember simple

and one- and two-step job instructions; (2) respond appropriately to coworkers, supervisors, and the public; and (3) respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision. (AR 150.)

Plaintiff demonstrates no error in the ALJ's application of the Medical-Vocational Guidelines which are available as a framework despite plaintiff's non-exertional impairment. 20 C.F.R. § 416.969a(d). The Ninth Circuit Court of Appeals has provided guidance to ALJs to apply the Medical-Vocational Guidelines:

> [T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986); *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983); *Olde v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).
>
> The ALJ must weigh conflicting evidence concerning the claimant's past work experience, education, and present psychological and physical impairments. The ALJ then applies the grids to these factors, ensuring that the final determination will be both consistent with other similar cases and expeditious. The claimant may challenge the sufficiency of the evidence supporting the ALJ's assessment. A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.
>
> All this can be accommodated to a system of fair and expeditious disposition of claims by those asserting pain or other non-exertional limitations. It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines.

*Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir. 1988) (citing decisions from the Second, Fourth, Fifth, Sixth and Eighth Circuit Courts of Appeals).

Plaintiff failed to demonstrate a significant non-exertional impairment or that non-exertional limitations significantly limit the range of work permitted by his exertional limitations. Plaintiff points to no error in the ALJ's use of the Medical-Vocational Guidelines or finding that non-exertional limitations did not compromise plaintiff's capacity for unskilled work. The ALJ properly found that plaintiff's non-exertional limitation for simple work does not significantly erode the occupational base or range of permitted work in that unskilled work involves simple duties. *See* Social Security Ruling 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine

work setting.")

This Court finds no error in the ALJ's residual functional capacity findings.

### Plaintiff's Credibility

Plaintiff contends that the ALJ did no adequately review plaintiff's testimony and "failed to give adequate reasons for rejecting credibility." The Commissioner responds that the ALJ's credibility finding is supported by substantial evidence and is sufficiently specific to demonstrate that the ALJ did not arbitrarily discredit plaintiff.

"Credibility determinations are the province of the ALJ." *Fair*, 885 F.2d at 604; *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

A claimant bears an initial burden to "produce objective medical evidence of underlying 'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably be expected to produce pain or other symptoms.'" *Baston v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). If a claimant satisfies such initial burden and "if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1284.) "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character

evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Moreover, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* S.S.R. 96-7p.[3]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of pain medication;
4. Treatment, other than medication, for pain relief;
5. Functional restrictions;
6. Claimant's daily activities;
7. Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and
8. Ordinary techniques to test a claimant's credibility.

*Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

---

[3] Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

After detailing plaintiff's medical treatment and testimony, the ALJ properly questioned plaintiff's credibility:

> Weighing all relevant factors, I find that the claimant's impairments are not as limiting as he alleges, and his credibility is generally poor when evaluated under SSR 96-7p. Claimant alleges chronic neck and back pain, yet he has never sought the help of a specialist to determine the cause or alleviate the pain. Additionally, claimant's treating physician has not referred him to a neurologist or orthopedist because of intractable pain. When the claimant applied for benefits, the interviewer said she had to speak very loud and repeat herself (Exhibit 5E, p. 5); the claimant also testified at the hearing that he was hard of hearing. However, the medical evidence of record contains no mention of hearing loss. Dr. S. Damania stated there was no evidence of hearing deficit (Exhibit 4F, p. 3). Dr. R. Damania stated the claimant answered most of his questions and followed all of his instructions; the doctor did not say that the interpreter had to speak loudly to be heard. Regarding claimant's alleged vision problems, I noted that the claimant navigated into and out of the hearing room without difficulty, and said he could distinguish objects on a table in front of him. In his application, the claimant stated he could not drive (Exhibit 5E, p. 3). However, at the hearing, he testified that he actually drives twice a week, took the driver's test without glasses, and does not even have any glasses or use them on his current driving outings. The claimant initially testified that he only goes to the store when his daughter-in-law does not go, then later testified that he actually goes every three days. The claimant's demeanor at the hearing was evasive and non-responsive. He has no work record to enhance his credibility. He has no history of trying to obtain training in job skills or language. His medical history indicates he has not sought treatment for all of his alleged physical and mental ailments. For all of the foregoing reasons, I find that I am able to assign very little weight to claimant's subjective complaints. (AR 23.)

Plaintiff points to no definitive error in the ALJ's credibility evaluation. As detailed above, the ALJ made specific findings to reject plaintiff's claims. Plaintiff failed to establish an underlying impairment giving rise to pain and symptoms to the degree which plaintiff claims. The ALJ properly noted the absence of treatment for and discrepancies as to neck and back pain, hearing deficiency and "all of his alleged physical and mental ailments." (AR 23.) *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") Plaintiff's March 15, 2003 lumbar spine x-rays were negative and demonstrated normal vertebral bodies and disc spaces. (AR 169.) September 28, 2004 lumbosacral spine x-rays revealed only mild spondylosis. (AR 206.) Plaintiff admitted that he had not been referred to a psychiatrist or psychologist and did not attend group therapy. (AR 149, 217.) *See Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1464 (ALJ entitled to draw an inference from general lack of care).

The ALJ correctly noted the inconsistencies among plaintiff's poor vision claims, testimony

about driving, and written admission of driving. (AR 226-228.)  At times, plaintiff claimed he drove (AR 148, 149, 229), but at other times denied the ability to drive (AR 103, 115 ).  Plaintiff contradicted himself regarding his ability to care for himself, including grooming, dressing and bathing.  (AR 101, 115, 222.)  Plaintiff claimed inability to get up and walk without help although there is no medical evidence to support such claim.  (AR 113.)  Plaintiff acknowledged no side effects from medication. (AR 219.)  The ALJ correctly pointed to plaintiff's vacant work history.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (poor work history and little propensity to work discounted claimant's credibility as to inability to work).  Moreover, plaintiff's limited treatment was conservative.  *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative treatment" suggests "a lower level of both pain and functional limitation.") Substantial evidence supports the ALJ's findings on plaintiff's credibility to preclude this Court to second guess the ALJ.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled.  This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this Court RECOMMENDS to:

1. DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings; and

2. DIRECT this Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Joua Vang Yang and to close this action.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than June 26, 2006, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed and served no later than July 7, 2006 and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be

served on the magistrate judge.  The district judge will review the magistrate judge's findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 12, 2006**                                  /s/ Lawrence J. O'Neill
66h44d                                                                 UNITED STATES MAGISTRATE JUDGE